IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LE-VEL BRANDS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:18-cv-01352-S |
| | § | |
| SHYLO ECKSTROM, | § | |
| | § | |
| Defendant. | § | |

**MOTION FOR CONTEMPT AND FOR SANCTIONS AND BRIEF IN SUPPORT**

Le-Vel Brands, LLC ("Le-Vel") files this, its Motion for Contempt and Motion for Sanctions (the "Motion") and hereby moves this Court to hold Defendant Shylo Eckstrom ("Eckstrom") in contempt of Court for violating the Agreed Preliminary Injunction [Doc 15] (the "PI") and issue sanctions against Eckstrom, and, in support thereof, respectfully states as follows:

### I.   BACKGROUND

1.   Le-Vel brings this Motion as a result of Eckstrom's blatant disrespect for her agreement with Le-Vel and this Court's order. On June 26, 2018, Le-Vel and Eckstrom reached an agreement regarding the terms for injunction and presented the Court with the PI, which the Court then entered. [Doc 15]. When the Court issued the PI, it found: (1) that it is probable that Le-Vel will recover against Eckstrom for breach of contract, business disparagement, defamation, tortious interference with existing contracts, and tortious interference with prospective business relations; and (2) without the PI, Le-Vel would suffer further, imminent harm and irreparable injury. *Id*. Thus, the Court enjoined Eckstrom from the following:

a. Directly or indirectly, on her behalf or on behalf of any other person, partnership, association, corporation, or other entity, attempting to obtain the withdrawal from Le-Vel any persons or entities that Defendant knows or, after reasonable inquiry, should know are employees, independent contractors, or persons or entities that have purchased or sold Le-Vel products in the preceding six (6) months ("Active Promoter"). A reasonable inquiry requires Defendant to take affirmative steps to determine whether the person or entity is an employees, independent contractor, or Active Promoter of Le-Vel, and it shall be sufficient to ask that person or entity whether he, she, or it is an employee, independent contractor, or Active Promoter of Le-Vel;

b. Directly or indirectly, on her behalf or on behalf of any other person, partnership, association, corporation, or other entity, hiring any person that Defendant knows or, after reasonable inquiry, should know are employees, independent contractors, or Active Promoter of Le-Vel. A reasonable inquiry requires Defendant to take affirmative steps to determine whether the person or entity is an employees, independent contractor, or Active Promoter of Le-Vel, and it shall be sufficient to ask that person or entity whether he, she, or it is an employee, independent contractor, or Active Promoter of Le-Vel;

c. Directly or indirectly, on her behalf or on behalf of any other person, partnership, association, corporation, or other entity, approaching or soliciting any person or entity that Defendant knows or, after reasonable inquiry, should know are employees, independent contractors, or Active Promoter of Le-Vel. A reasonable inquiry requires Defendant to take affirmative steps to determine whether the person or entity is an employees, independent contractor, or Active Promoter of Le-Vel, and it shall be sufficient to ask that person or entity whether he, she, or it is an employee, independent contractor, or Active Promoter of Le-Vel;

d. Directly or indirectly, on her behalf or on behalf of any other person, partnership, association, corporation, or other entity, inducing or persuading any person or entity that Defendant knows or, after reasonable inquiry, should know are employees, independent contractors, or Active Promoter of Le-Vel. A reasonable inquiry requires Defendant to take affirmative steps to determine whether the person or entity is an employees, independent contractor, or Active Promoter of Le-Vel, and it shall be sufficient to ask that person or entity whether he, she, or it is an employee, independent contractor, or Active Promoter of Le-Vel;

e. Directly or indirectly, on her behalf or on behalf of any other person, partnership, association, corporation, or other entity, interfering or attempting to interfere with any of Le-Vel's contractual business or economic relationship with its customers or Active Promoters that Defendant knows or, after reasonable inquiry, should know are employees, independent contractors, or Active Promoter of Le-Vel. A reasonable inquiry requires Defendant to take affirmative steps to determine whether the person or entity is an employees, independent contractor, or Active Promoter of Le-Vel, and it shall be sufficient to ask that person or entity whether

    he, she, or it is an employee, independent contractor, or Active Promoter of Le-Vel; and

f. Making any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize Le-Vel, its reputation, practices, or conduct or its customers, Active Promoters, employees, directors and officers. *Id*.

2. Provisions a. through e. of the PI expired on April 16, 2018. Provision f. remains in effect until final hearing. *Id*.

3. On or around May 2, 2019, after the expiration of Provisions a. through e., Le-Vel obtained new evidence of communications between Eckstrom and Active Promoter Pamela Wright ("Wright"), which occurred while all Provisions of the PI were enforceable. (App. at 005-036). As further explained below, Eckstrom shamelessly violates the PI by defaming and disparaging Le-Vel in attempt to solicit Wright to leave Le-Vel and join Modere, Inc. ("Modere"). From telling lies about Le-Vel's products to spreading rumors of "rape" and unfaithfulness in Le-Vel, Eckstrom's recalcitrant and callous conduct shows a deep lack of respect for the authority of this Court. *Id*.

4. Eckstrom stripped Le-Vel of the relief prescribed in the PI and has thumbed her nose to this Court's order. Her unremitting violation of the PI continues to cause Le-Vel pecuniary injuries as well as damage to its good will and business reputation. As such, Le-Vel asks the Court to find Eckstrom in contempt of Court and issue sanctions against Eckstrom by reinstating the full PI until final hearing, awarding Le-Vel money damages in the amount of $100,000.00, and awarding $8,625.00 in Le-Vel's attorney's fees associated with the filing of this Motion.

## II. BRIEF IN SUPPORT

5. The Court should issue a civil contempt order because Plaintiff can establish by clear and convincing evidence that Defendant undoubtedly violated the PI. *AngioDynamics, Inc.*

*v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015). A court "possess[es] the inherent authority to enforce [its] own injunctive decrees." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). "A party commits contempt when [she] violates a definite and specific order of the court requiring [her] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost*, 68 F.3d at 958 (quoting *Securities & Exchange Comm. v. First Fin. Grp. of Tex.*, 659 F.2d 660, 669 (5th Cir. 1981)).

6.   For the Court to hold Eckstrom in contempt, Le-Vel must show (1) the PI was in effect at the time of Eckstrom's conduct; (2) the PI required certain conduct by Eckstrom; and (3) Eckstrom violated the PI. *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009). The moving party bears the burden of proving contempt by clear and convincing evidence. *Travelhost*, 68 F.3d at 958 (citing *Petroleos Mexicanos v. Crawford Ents., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). The Fifth Circuit has defined this standard in the contempt context to mean:

> that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sough to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). Because Le-Vel presents the Court with clear and specific evidence of Eckstrom's violation of the PI, the Court should issue an order of civil contempt and sanction Eckstrom.

**A.   THE PI WAS IN EFFECT AT THE TIME OF DEFENDANT'S CONDUCT.**

7.   On June 14, 2018, counsel for Eckstrom and counsel for Le-Vel stood before this Count and announced the parties' agreement to the terms of the PI. On June 26, 2018, the Court entered the PI, ordering Eckstrom be enjoined from, among other activities, "hiring, . . . approaching or soliciting, . . . inducing or persuading, . . . [or] attempting to obtain the withdrawal from Le-Vel any persons or entities that Defendant knows or, after reasonable

inquiry, should know are employees, independent contractors, or persons or entities that have purchased or sold Le-Vel products in the preceding six (6) months ('Active Promoter')." [Doc. 15]. Additionally, the PI prohibits Eckstrom from "making any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize Le-Vel, its reputation, practices, or conduct or its customers, Active Promoters, employees, directors and officers. *Id*. While Provisions a. though e. expired on April 16, 2019, Provision f. and the rest of the PI "remain in full force and effect until such time as ordered by this Court upon final disposition of this matter at trial or otherwise." *Id.*

8. Eckstrom's conduct and statements prompting this Motion occurred between June 27, 2018 and January 16, 2019 while the PI was in full effect. (App. at 005-0036).

B. **DEFENDANT VIOLATED THE PI.**

9. Despite the PI's clear and unambiguous language, Eckstrom continues to routinely solicit Le-Vel's customers and Active Promoters, disparage Le-Vel's business, and defame Le-Vel's executives and employees. On or around May 2, 2019, after Provisions a. through e. expired, Le-Vel obtained new evidence showing Eckstrom's solicitation of Wright and Eckstrom's defamatory and disparaging conduct while the PI was still in full effect. *Id*. In fact, as soon as June 27, 2018, the *day after* this Court issued the PI, Eckstrom continued the exact conduct the PI expressly prohibits. (App. at 005). Specifically, from June 27, 2018 through January 16, 2019, Eckstrom made the following written and verbal statements to Wright:

- "I can predict in the next two months, maybe even three, there won't be much left. It's not because of negativity or drama. Their culture is crap in my opinion, but its because of poor business decisions over and over again." (App. at 036; Audio File 1).

- "Without a doubt, there are things that you don't even know, that lots of leaders know, that would make your decision [about leaving Le-Vel] final. . . They are all feeling the same way." (App. at 036; Audio File 2).

- "Unless [Le-Vel] makes some major changes, which I've always wished they would, there is no duplication or retention of their customers because of their promotionals. . . It's just slowly declining. . . In reality, it's a steady decline and has been since 2016." (App. at 036; Audio File 3).

- "I wouldn't take Balance. If you are taking Balance, you better be taking it once a month, that's it. That is a straight up laxative . . . and people's advertising of it is going to destroy the company. . . You cannot take Sena everyday, it destroys the internal system. . . But you know, my big thing was the lie. . . There are nine big ingredient changes that nobody is talking about." (App. at 036; Audio File 4).

- "[Le-Vel] has lowered the quality. . . Most people have been gaining weight in the past year and a half because they upped the soy and took out an ingredient. . . If you look at the leaders in Le-Vel, they have all gained 15 to 20 pounds. It isn't because they are not doing the products." (App. at 036; Audio File 5).

- "I took a huge risk. I risked a massive business, plus I knew I was going to get sued." (App. at 036; Audio File 6).

- "Companies that are doing things like, you know, maybe double volume or free enrollments in saying they have all these people. . .  They are going to get audited. And I'm going to tell you, Le-Vel is one of the first companies they are going to audit." (App. at 036; Audio File 8).

- "You can clearly see the writing on the wall. . . Le-Vel is trying to copy all the stuff [Modere] is doing." (App. at 036; Audio File 9).

- "[With Modere] you know you are getting good shit, not that crap that they started adding into Thrive." (App. at 036; Audio File 10).

- "Many are leaving or have left just haven't announced." (App. at 015).

- "[T]hat company is in a bad position biz wise, take any of your [sic] stuff out." (App. at 019).

- "[Le-Vel] is the biggest bullshit ever." (App. at 025).

- "Pro Bars are ONE bars [Le-Vel] is outsourcing. Have been for a while." (App. at 026).

- "It's either a sale or a merger either way your CEO's are done." (App. at 028).

- "Fuck those assholes. They are the biggest liars ever." (App. at 031).

10. Eckstrom even went so far as to send Wright a text message declaring that Le-Vel covered up serious crimes of moral turpitude such as "rape, cheating, and stealing," and that Le-Vel's CEO calls Promoters "fat" and that he "cheats constantly." (App. at 32).

11. Eckstrom's slanderous statements are false, made with malice, and are a representation of the gross lengths Eckstrom will go to attack Le-Vel. The fact that the Court expressly ordered Eckstrom to refrain from the above behavior makes her conduct more egregious and exhibits Eckstrom's defiance of her legal duties imposed by this Court. These statements show that Eckstrom has no regard for her Court-ordered obligations and has not only continued to violate her contractual and legal obligations, but has insulted the Court's authority in the process.

12. Moreover, Eckstrom's above-described conduct only provides a limited view into her wrongful actions. Le-Vel obtained new evidence of text messages and audio clips related only to Eckstrom's communications with Wright. Eckstrom did not produce these communications in discovery, though they were responsive to Le-Vel's Second Request for Production No.'s 1 and 7. To date, Eckstrom has produced only 28 documents comprising social media and text messages, and Le-Vel currently has a Motion to Compel pending. In light of the new evidence obtained by Le-Vel outside of the discovery process, it is clear that Eckstrom is concealing and withholding responsive documents that likely evidence her continued disparagement, solicitation, and defamation of Le-Vel. Thus, Eckstrom's communications with Wright represent only a small fraction of Eckstrom's unlawful conduct. As such, Le-Vel requests that the Court silence Eckstrom's conduct by finding her in contempt and issuing sanctions.

**C.     The Court should Sanction Eckstrom by Reinstating the PI and Awarding Damages and Attorneys' Fees.**

13.     Ecktrom's clear and obvious violations of the PI warrant sanctions, including reinstatement of the PI and the award of money damages and attorney's fees. "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (quoting *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947) ); *see also Travelhost*, 68 F.3d at 961–62. A court "has broad discretion in the assessment of damages in a civil contempt proceeding." *American Airlines*, 228 F.3d at 585 (quoting *Long Island Rail Co. v. Bhd. of Rail. Trainmen*, 298 F. Supp. 1347, 1347 (E.D.N.Y. 1969) ). "The purpose is to compensate for the damages sustained." *Id.* Here, sanctioning Eckstrom may pressure her to comply with the PI and will help remedy Le-Vel's harm resulting from Eckstrom's conduct.

14.     Le-Vel requests that the Court find Eckstrom in contempt of Court for violation the PI and sanction Eckstrom by (1) reinstating the PI; (2) awarding money damages; and (3) awarding attorney's fees incurred for the filing of this Motion. First, while Provision f. of the PI, prohibiting Eckstrom from defaming, disparaging, or criticizing Le-Vel, remains in effect until final hearing, Eckstrom has eradicated any relief Le-Vel might have experienced by her incessant violations of the PI. Eckstrom's communications with Wright show that Eckstrom began violating the PI the day after the Court issued the order. (App. at 005). Eckstrom continued to solicit, disparage and defame Le-Vel throughout the imposition of the PI, causing Le-Vel the irreparable harm this Court sought to avoid by entering the PI. (App. at 005-035). Because Eckstrom has continuously violated the PI by spreading lies and bombarding Le-Vel's

Promoters, Le-Vel asks that the Court reinstate the PI until final hearing so that Le-Vel may enjoy the relief this Court intended with its order.

15. The Court should also sanction Eckstrom by awarding Le-Vel money damages resulting from Eckstrom's violation of the PI. Eckstrom's complete disregard for her obligations under the PI make clear that reinstating the full terms of the PI alone will not "coerce the defendant into compliance." *American Airlines*, 228 F.3d at 585. Instead, money damages will serve to chill Eckstrom's injurious conduct by imposing financial consequences for noncompliance and reminding Eckstrom the Court's authority. Money damages will also compensate Le-Vel for the loss sustained by Eckstrom's violations of the PI. Due to the lack of discovery produced by Eckstrom and the secretive nature of her wrongful conduct, Le-Vel is unable to accurately determine its financial injury resulting from Eckstrom's violation of the PI. At the current stage of discovery, it is difficult to decipher the totality of her wrongful solicitation or the extent of her defamatory statements. Out of necessity, Le-Vel has noticed 17 third-party depositions to uncover evidence that Eckstrom has failed to produce or is otherwise hiding. However, the fact remains that Le-Vel is continuing to lose Active Promoters, customers, and revenue streams as a result of Eckstrom's PI violations. Thus, Le-Vel requests that the Court sanction Eckstrom $100,000.00 to be paid to Le-Vel upon the granting of this Motion with the sanction continually increasing in $25,000.00 increments for each future violation of the PI. While Le-Vel intends on proving all its incurred damages at trial, a pecuniary sanction for Eckstrom's blatant and willful violation of the PI may encourage her compliance and will help remedy Le-Vel's injuries caused by Eckstrom's conduct.

16. Lastly, the Court should sanction Eckstrom by awarding Le-Vel its attorneys' fees for the filing of this Motion. *See Bunnett & Co., Inc. v. Dores*, A-15-CV-1104-LY-AWA, 2018

WL 1168860, at *14 (W.D. Tex. Mar. 6, 2018), report and recommendation adopted, 1:15-CV-1104-LY, 2018 WL 1830790 (W.D. Tex. Mar. 29, 2018). Eckstrom's violation of the PI required Le-Vel to draft and file this Motion, causing Le-Vel to unnecessarily incur related legal fees in the amount of $8,625.00. (App. at 001-002). Had Eckstrom complied with the PI, Le-Vel would not have suffered this additional expense. As such, Le-Vel requests that the Court award Le-Vel $8,625.00 for its attorneys' fees associated with the filing of the Motion.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Le-Vel Brands, LLC, respectfully requests that the Court enter an order:

A. Holding Eckstrom in contempt of the PI;

B. Reinstating all terms of the PI;

C. Sanctioning Eckstrom by an award of damages of $100,000.00 to be paid to Le-Vel;

D. Continuing sanctions against Eckstrom in increasing value of $25,000.00 increments per future violation;

E. Awarding Le-Vel $8,625.00 for its expenses and reasonable and necessary attorneys' fees incurred as a result of Eckstrom's violations of the PI; and

F. Granting Plaintiff such other and further relief as the Court deems appropriate.

Respectfully submitted,

**SHAPIRO BIEGING BARBER OTTESON LLP**

By:  */s/ Kevin T. Schutte*
 Kevin T. Schutte
 Texas Bar No. 24033050
 kschutte@sbbolaw.com
 William P. Dunne III
 Texas Bar No. 24097631
 wdunne@sbbolaw.com

5430 Lyndon B Johnson Freeway, Suite 1540
Dallas, Texas  75240
Telephone:  (214) 377-0149

**ATTORNEYS FOR LE-VEL BRANDS, LLC**

**CERTIFICATE OF CONFERENCE**

On May 10, 2019, Plaintiff's counsel made multiple attempts to conference with Defendant's counsel regarding the issues presented in the Motion, but Defendant's counsel has not conferenced or indicated whether they are opposed or unopposed.

*/s/ Kevin T. Schutte*
Kevin T. Schutte

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of May, 2019, I served a copy of the foregoing on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Kevin T. Schutte*
Kevin T. Schutte